IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LINDA W.L. STARR, | ) | CV NO 05-00665 DAE LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII, | ) | |
| DEPARTMENT OF ACCOUNTING | ) | |
| AND GENERAL SERVICES | ) | |
| (DAGS); RUSS K. SAITO, in his | ) | |
| official capacity of State Comptroller | ) | |
| only, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT

The Court heard Defendants' Motion and Plaintiff's cross-motion on

September 4, 2007. Shawn A. Luiz, Esq., and Lunsford Dole Phillips, Esq.,

appeared at the hearing on behalf of Plaintiff; James E. Halvorson, and Claire W.S.

Chinn, Deputy Attorneys General, appeared at the hearing on behalf of Defendants.

After reviewing the motions, the supporting and opposing memoranda, and the

supplemental briefing, the Court DENIES Defendants' Motion for Summary

Judgment and GRANTS IN PART AND DENIES IN PART Plaintiff's Cross-Motion for Partial Summary Judgment.

BACKGROUND

Plaintiff is employed by the State Department of Accounting and General Services ("DAGS") as a Data Processing Systems Analyst V.  Plaintiff filed the instant action against DAGS, a state governmental entity, and against Russ Saito, in his official capacity as the Comptroller for the State of Hawaii.  Plaintiff alleges that she has a sleep disorder which prohibits her from getting sufficient sleep and that Defendants have discriminated against her based upon this alleged disability by suspending and investigating her, giving her an ultimatum to choose between resignation or job transfer, and refusing to provide her with a reasonable accommodation.  Plaintiff also alleges that Defendants have retaliated against her.

Defendants maintain that they have reasonably accommodated Plaintiff by (1) allowing her to report to work after 9:00 a.m., as long as she fills out the necessary forms for vacation or sick leave for her tardiness; (2) granting Plaintiff up to two hours of paid non-productive overhead time for Plaintiff to use the restroom due to her decreased mobility; and (3) processing Plaintiff's numerous requests for accommodation, including relocating Plaintiff's office to a

more convenient building, providing Plaintiff with a reserved handicap parking

stall, adjusting the timing of elevator doors, and arranging special transportation

for Plaintiff to attend work-related functions outside of the office.  Defendants also

maintain that despite those accommodations, Plaintiff consistently has disregarded

DAGS' requirement of reporting to work by 9:00 a.m. and filling out the

appropriate forms to use vacation or sick time when she is tardy.  Plaintiff

concedes that she has a history of consistent tardiness, but claims that her tardiness

has not affected her work performance in that she still performs satisfactorily and

claims that her tardiness is caused by her sleep disorder.

On October 25, 2005, this Court issued an Order Granting Plaintiff's

Motion for Temporary Restraining Order and Preliminary Injunction, ordering

Defendants to maintain the status quo of Plaintiff's employment status, allow

Plaintiff until 9:15 a.m. to report to work, not to take action against Plaintiff so

long as she reports to work by 9:15 a.m., and not to take any disciplinary action

regarding the time Plaintiff reports to work, so long as she reports by 9:15 a.m.

That injunction was dissolved on March 19, 2007.

On January 26, 2006, this Court granted Defendants' motion to

dismiss Plaintiff's amended complaint and gave Plaintiff leave to amend her

complaint.  Plaintiff filed a second amended complaint on February 24, 2006.  In

her second amended complaint, Plaintiff alleges: violations of Title I of the

Americans With Disabilities Act ("ADA") in count 1; violations of the

Rehabilitation Act of 1973, 29 U.S.C. § 794 (§ 504 of the Rehabilitation Act) in

count 2; retaliation in violation of 42 U.S.C. § 12203 (the ADA) in count 3; and

violations of Hawaii Revised Statutes Chapter 378 in count 4.

Defendants filed the instant motion for summary judgment on June

27, 2007.  Plaintiff filed her opposition and cross-motion for partial summary

judgment on August 17, 2007.  Defendants filed a reply and an opposition to

Plaintiff's cross-motion on August 24, 2007.  This Court held a hearing and then

asked for supplemental briefing regarding the Rehabilitation Act claim.  Both

parties filed their supplemental briefs on October 5, 2007, and Defendants filed an

errata that same day, and on October 15, 2007, Defendants field an addendum to

their supplemental brief.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th

Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  A

main purpose of summary judgment is to dispose of factually unsupported claims

and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

   Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at

323.  A moving party without the ultimate burden of persuasion at trial–usually,

but not always, the defendant–has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire &</u>

<u>Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d

626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

   Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  <u>Porter</u>,

419 F.3d  at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage.  Id.  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

T.W. Elec. Serv., 809 F.2d at 631.

<u>DISCUSSION</u>

I.   <u>Defendants' Motion for Summary Judgment</u>

Defendants have moved to dismiss all claims.  This Court previously dismissed with prejudice Plaintiff's ADA claims, § 1983 claims, and Hawaii Revised Statutes Chapter 378 claims against DAGS.  This Court also dismissed those claims against Mr. Saito to the extent Plaintiff sought monetary damages.  This Court held that Plaintiff could pursue her claims brought under the ADA and Hawaii Revised Statutes Chapter 378 for injunctive relief against Mr. Saito.  This Court also found that Plaintiff may pursue her Rehabilitation Act claims.

A.   <u>Plaintiff's ADA (count 1) and Hawaii Revised Statutes Chapter 378 (count 4) Claims for Injunctive Relief Against Mr. Saito</u>

Defendant Saito argues that Plaintiff's claims for prospective injunctive relief are barred by the Eleventh Amendment because Plaintiff has not alleged an ongoing present violation of federal law.

Pursuant to the <u>Ex Parte Young</u> doctrine, the Eleventh Amendment does not bar suits against state officials acting in their official capacities when only prospective injunctive relief is being sought. <u>Lightsy v. Hawaii</u>, No. Civ. 05-00515ACK/LEK, 2006 WL 314335, at *5 (D. Haw. Feb. 7, 2006).  If the relief requested would in essence compensate the plaintiff for a past injury, the claim is barred, even though the relief sought was styled as something else.  <u>Han v. United</u>

7

States Dep't of Justice, 45 F.3d 333, 338 (9th Cir.1995).  In order to determine

whether the Ex Parte Young doctrine allows an otherwise barred claim to go

forward, the "court need only conduct a 'straightforward inquiry into whether [the]

complaint alleges an ongoing violation of federal law and seeks relief properly

characterized as prospective.'" Miranda B. v. Kitzhaber, 328 F.3d 1181, 1189 (9th

Cir. 2003) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635,

645 (2002)).  A mere allegation that the plaintiff is seeking prospective relief is not

sufficient to avoid dismissal for Eleventh Amendment immunity.  Lightsy, 2006

WL 314335 at *5.

        In her Complaint, Plaintiff seeks to be reinstated to full status of her

employment by requiring Defendant Saito to restore her service computation date

back to her initial date of hire.  Plaintiff also requests that Defendant Saito be

restrained from further future conduct violating her rights secured by the ADA.

Plaintiff basis this request on alleged passed violations of the ADA, such as

suspensions, failure to fully engage in the interactive process, and failure to

provide reasonable accommodations.  Plaintiff asserts that Defendant Saito has

continued to not allow her to start work after 9:00 a.m., or allow her to work from

home, accommodations to which Plaintiff believes she is entitled.

Defendant Saito has not addressed Plaintiff's request to restore her service computation or her requests to prohibit future violations of the ADA in his motion. It is clear to this Court that these requests seek prospective injuncitve relief. Plaintiff has alleged an ongoing action that continues to deprive her of her rights under the ADA. Thus, the Eleventh Amendment does not bar her claims under the ADA and Hawaii Revised Statutes Chapter 378 for prospective injunctive relief against Mr. Saito.

  B. <u>Rehabilitation Act Claims</u>

   1. <u>Receipt of Federal Funds</u>

Defendants argue that Plaintiff's Rehabilitation Act claims are barred because DAGS does not receive federal financial assistance to operate its divisions.

As stated in this Court's previous order, the Eleventh Amendment is not a bar to claims brought under Section 504 of the Rehabilitation Act where the state accepts federal Rehabilitation Act funds. <u>Phiffer v. Columbia River Corr. Inst.</u>, 384 F.3d 791, 793 (9th Cir. 2004) ("a State waives Eleventh Amendment immunity by accepting federal funds."); <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1155-56 (9th Cir. 2002) (same). Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits

of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance[.]"  29 U.S.C.. § 794(a).  "Program or Activity" is

defined as

> all of the operations of--(1)(A) a department, agency,
> special purpose district, or other instrumentality of a
> State or of a local government; or (B) the entity of such
> State or local government that distributes such assistance
> and each such department or agency (and each other
> State or local government entity) to which the assistance
> is extended . . . .

29 U.S.C.. § 794(b) (emphasis added).  "This definition is inclusive."  Thomlison

v. City of Omaha, 63 F.3d 786, 789 (8th Cir. 1995).

    In Thomlison, the Fire Division did not receive federal financial

assistance.  Id.  However, the Fire Division was part of the Public Safety

Department.  The Public Safety Department also included the Police and

Communications Divisions, and those divisions did receive federal funds.  Based

upon the inclusive definition of "program or activity," the court held that

"[a]lthough the Fire Division did not receive any federal assistance directly,"

because other Public Safety Department divisions, including the Police Division,

did receive such funds, the entire Public Safety Department was subject to the

Rehabilitation Act, which included the Fire Division.  Id.

Likewise, in White v. Engler, the particular program at issue, the Merit Award Program, did not receive federal funds.  188 F. Supp. 2d 730, 746 (E.D. Mich. 2001).  However, the Department of Treasury, which administered and oversaw the Merit Award Program, received federal funds.  Thus, the court found that Merit Award Program fell within the definition of "program or activity," and the court rejected the defendant's program-specific approach.  Id. at 747.  The court noted that the statute, as amended, "was intended to overrule the Supreme Court's "program specific" definition in Grove City College v. Bell, 465 U.S. 555, 104 S. Ct. 1211, 79 L. Ed. 2d 516 (1984)."  Id. at 746.  Congress had stated that the purpose of the statute was to restore the broad scope of coverage.  Id.  The court also noted that the new definition prohibited "discrimination against the handicapped on an institution-wide basis, instead of only in connection with the limited program or activity actually receiving federal funds, if any federal funds are received by any program or activity of the institution."  Id.; see Schroeder v. City of Chicago, 927 F.2d 957, 962 (7th Cir. 1991) (the "statute was intended to overrule Grove City College v. Bell, 465 U.S. 555, 104 S. Ct. 1211, 79 L. Ed. 2d 516 (1984), so that the various civil rights statutes including the Rehabilitation Act would apply to the entirety of any state or local institution that had a program or activity funded by the federal government."); see also Lovell v. Chandler, 303 F.3d

1039, 1051 (9th Cir. 2002) (the term "program or activity" "covers all the activities of the [state] department or the agency receiving federal funds."); Huber v. Howard County, Md., 849 F. Supp. 407, 415 (D. Md. 1994) ("if one part of a department receives federal financial assistance, the whole department is considered to receive federal assistance so as to be subject to § 504."); Tanberg v. Weld County Sheriff, 787 F. Supp. 970, 974 (D. Colo. 1992) ("If any part of the Department receives federal financial assistance, the whole entity is deemed to be a program receiving federal financial assistance under 29 U.S.C. § 794(b)").

Here, it is undisputed that the Office of Elections and the State Foundation on the Culture and the Arts are administratively attached to DAGS, and those agencies do receive federal funds.  Those agencies are not attached to any other State department.  Although DAGS does not exercise control or supervision over the day to day operations of those agencies and each agency has its own board and commission and separate budget, those agencies are attached to DAGS because their funding and budget are required to be included in DAGS' consolidated budget pursuant to Hawai`i Revised Statutes.  Furthermore, Defendants state that "the expenditure ceiling for these federal funds are established through budget appropriations to these two agencies each fiscal year." (Yoneshige Decl.)  Indeed, Defendants state that when the Office of Elections

makes obligations to procure services or obtain goods, DAGS ensures that the

Office of Elections complied with applicable procurement and disbursement laws,

and if so, DAGS "authorize[s] the disbursement for that agency." (Yoneshige

Depo. at 30.)  DAGS then distributes the federal funds that have been set aside for

that agency to the agency's vendors.  (Id. at 31.)  DAGS essentially acts as the

"paying agent" by writing the check to distribute the federal funds.  (Id., 39-41)

In addition to these two agencies, DAGS is the expending agency of

federal funds appropriated to the statewide disaster warning and communication

devices project because DAGS assists the Department of Defense in the planning

and design of the project.  Also, the Archives Division received a federal grant in

fiscal year 2006.

Although these federal funds are included in the Department of

Defense's budget and not in DAGS' budget, and DAGS does not receive federal

funds for its own operating budget, all of these connections to agencies that receive

federal funds are sufficient for DAGS to fall within the definition of "program or

activity."  Moreover, DAGS is clearly covered by 29 U.S.C. § 794(b)(1)(B) as it is

"the entity of such State or local government that distributes such assistance."

DAGS has admitted that it is such an entity and that it distributes the federal funds

to vendors of the attached agencies.  Thus, in line with the cases discussed above,

DAGS is subject to the Rehabilitation Act.

      C.    <u>Claims under the ADA, the Rehabilitation Act and Haw. Rev. Stat.
Chapter 378</u>

      1.    <u>Disability Definition</u>

      Defendants next argue that Plaintiff cannot prove a prima facie case of

disability discrimination or retaliation under the ADA, the Rehabilitation Act, and

Hawaii Revised Statutes Chapter 378 because she cannot prove that she is

disabled, as defined by the ADA.

      The same legal standard applies to determine whether Plaintiff falls

under any of the three Acts.  <u>See</u> 29 U.S.C. § 794(g) (noting that the standard used

to determine whether a violation occurred is the standard used under Title I of the

ADA); <u>Schefke v. Reliable Collection Agency, Ltd.</u>, 32 P.3d 52, 69 (Haw. 2001)

(Hawaii courts look to federal decisions as guidance for interpreting Chapter 378

since it was modeled after the federal discrimination statutes).

      The ADA defines a "disability" as "(A) a physical or mental

impairment that substantially limits one or more of the major life activities of such

individual; (B) a record of such impairment; or (C) being regarded as having such

an impairment."  42 U.S.C. § 12102(2); <u>see</u> 28 C.F.R. § 36.104; HAR § 12-46-182.

The Supreme Court has articulated a three-step inquiry for determining whether an

impairment substantially limits a major life activity so as to constitute a disability under the ADA.  See Bragdon v. Abbott, 524 U.S. 624, 631 (1998).  First, the court must ascertain whether plaintiff has a physical or mental "impairment."  Next, the court must identify whether any "major life activities" are impacted by that impairment.  Finally, the court must determine whether the impairment "substantially limits" any major life activity.  Id.

        "Major life activities" include, but are not limited to, "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  28 C.F.R. § 36.104.  Sleeping  has also been identified as a major life activity.  McAlindin v. County of San Diego, 192 F.3d 1226, 1234 (9th Cir. 1999), as amended by 201 F.3d 1211 (9th Cir. 2000).

        An individual suffers a substantial limitation of a major life activity if that person is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j).  In determining whether an individual is substantially limited in a major life activity, the court should consider: "(i) The nature and severity of the impairment; (ii) The

duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j).  "[W]hether a person has a disability under the ADA is an individualized inquiry."  <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 482 (1999).

Plaintiff alleges that she is disabled because she has a sleep disorder known as obstructive sleep apnea and suffers from periodic leg movement syndrome, which in combination limit her ability to get a good night's sleep. Defendants argue that although Plaintiff has these impairments and she is limited, she is not substantially limited because her impairments can be corrected.

The Supreme Court has held that effects of corrective measures taken to mitigate a physical impairment must be taken into account when determining whether that individual is substantially limited in a major life activity.  <u>Sutton</u>, 527 U.S. at 482-83.

> A person whose physical or mental impairment is
> corrected by medication or other measures does not have
> an impairment that presently "substantially limits" a
> major life activity.  To be sure, a person whose physical
> or mental impairment is corrected by mitigating measures
> still has an impairment, but if the impairment is corrected
> it does not "substantially limi[t]" a major life activity.

<u>Id.</u>

Here, Defendants presented evidence from Dr. Jerrold Kram that

Plaintiff's sleep apnea is mild and corrected by an oral appliance.  Dr. Kram also

opined that her sleep apnea and periodic leg movements during sleep are not

explanations for her difficulty awakening in the morning and she does not show

signs of daytime sleepiness.  Plaintiff, however, has presented evidence by another

doctor, Dr. John Callan, that Plaintiff has a very severe sleep disorder and that the

oral appliance is only partially successful because it has not allowed her to achieve

stage 3 and REM sleep.  In sum, Dr. Callan states that Plaintiff suffers from

> insomnia with frequent nonspecific arousals and
> wakenings after considerably delayed sleep onset, very
> poor sleep quality with no documented stage 3 sleep and
> no significant REM sleep without positive airway
> pressure which she has not tolerated.  In addition, what
> sleep she does achieve is severely fragmented by the
> numerous events described above.

(Ex. E to Luiz's Decl.)  Plaintiff has provided evidence that when she wakes in the

morning she is still tired and she has to fight to stay awake during the day.  She

feels better on the weekends when she can sleep longer.

This evidence is sufficient to create a genuine issue of material fact as

to whether Plaintiff is substantially limited in the major life activity of sleeping.

See McAlindin, 192 F.3d at 1235 (finding a genuine issue of material fact

regarding the plaintiff's sleeping since he "stated in his declaration that he had

experienced great difficulty sleeping at night. In addition, as his doctor explained

in a letter to his supervisor, McAlindin's numerous medications disrupted his

normal sleep patterns and caused him to be drowsy at work. Although the record

indicates that the sleep medication has helped McAlindin's ability to rest at night

somewhat, his declaration states that his difficulty sleeping has persisted to some

extent."); see also Head v. Glacier NW Inc., 413 F.3d 1053, 1060 (9th Cir. 2005)

("Head's declaration alleging great difficulty sleeping at night, with some

improvement when using sleep medication, suffices to raise a genuine issue of

material fact.")

       2.     Disability Discrimination

          a.     Disparate Treatment Claims

      Defendants next argue that even if Plaintiff were disabled, Plaintiff

cannot show that she was discriminated against because of her disability.  Plaintiff

alleges that even though she uses the flexible start hour schedule of reporting to

work at 9:00 a.m., she is consistently tardy because her sleep disorders have left

her too weak to get ready for work by 9:00 a.m.  Plaintiff states that although she

has requested to start work later and end later, she was suspended for ten days in

February 2005, subjected to other suspensions, and investigated because of her

disability.  Defendants allege that Plaintiff was suspended for insubordination for

failing to submit proper forms to use her vacation/sick leave hours for any time that she is tardy or takes a longer lunch period.  Defendants also argue that Plaintiff has provided numerous excuses for tardiness, such as diarrhea, dizziness, nausea, back sprains, back spasms, and difficulty standing, none of which she provided medical forms for and none of which Defendants believe relate to her sleep disorder.  In addition, Plaintiff has not provided any reason why she has been exceeding her 65-minute lunch period without submitting the appropriate leave requests.  Defendants argue that Plaintiff has no direct evidence of discrimination and thus, must prove her case using the burden shifting test of the McDonnell Douglas Corp. v. Green case, and that Plaintiff cannot meet this burden.  Plaintiff alleges that she has direct evidence of discrimination and thus the burden of persuasion is on the employer.

In order to establish a disparate treatment claim, the plaintiff must produce evidence that gives rise to an inference of unlawful discrimination, either through direct evidence of discriminatory intent or through the burden shifting framework set forth in McDonnell Douglas Corp. v. Green.  Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003).

> Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.  When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual

> motivation of the employer is created even if the
> evidence is not substantial.  In contrast, when direct
> evidence is unavailable . . . and the plaintiff proffers only
> circumstantial evidence that the employer's motives were
> different from its stated motives, [the court] require[s]
> 'specific' and 'substantial' evidence of pretext to survive
> summary judgment.

Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003) (internal

quotation marks, brackets and citations omitted).

If there is no direct evidence, then the plaintiff retains the burden of

persuasion and must proceed under the McDonnel Douglass framework.  Under

that framework, the plaintiff must first establish a prima facie case of

discrimination.[1] Head, 413 F.3d at 1065.  If the plaintiff meets this burden,

> the burden of production, but not persuasion, then shifts
> to the employer to articulate some legitimate,
> nondiscriminatory, [or nonretaliatory]  reason for the
> challenged action.  If the employer does so, the plaintiff
> must show that the articulated reason is pretextual either

---

[1] In order to establish a prima facie case of disability discrimination, the Plaintiff must show that (1) she is disabled, as that term is defined by the ADA; (2) she is a qualified individual, meaning she can perform the essential functions of her job with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability.  Sevcik v. Unlimited Const. Services, Inc., 462 F. Supp. 2d 1140, 1146 (D. Haw. 2006); Humphrey v. Memorial Hosps. Ass'n, 239 F.3d 1128, 1133 (9th Cir. 2001) ("to prevail on a claim of unlawful discharge under the ADA, the plaintiff must establish that he is a qualified individual with a disability and that the employer terminated him because of his disability."); Braunling v. Countrywide Home Loans, Inc., 220 F.3d 1154, 1156-57 (9th Cir.  2000).

> directly by persuading the court that a discriminatory
> reason more likely motivated the employer or indirectly
> by showing that the employer's proffered explanation is
> unworthy of credence.

Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000)

(internal quotation marks and citation omitted).

      Here, Plaintiff provides deposition testimony of Richard Shimomua, a person who reviewed and approved three different suspensions for Plaintiff based on work time, break time, and leaving time.  Mr. Shimomua testified that he was not fully aware of Plaintiff's capabilities, but he did not want her to stay at work late for her own safety.  He also testified that he thought Plaintiff was taking advantage of DAGS by coming in past 9:00 a.m.  Mr. Shimomua further testified that he found it offensive that pursuant to a prior settlement agreement based on other impairments suffered by Plaintiff, Plaintiff had been given two hours of administrative time per day to use the bathroom.  Mr. Shimomua testified that in his view, it was the State that has been victimized, not Plaintiff, and that the State has been restrained from doing the right thing for other employees.  Finally, he also testified that

> A. [Mr. Shimomua]  . . . I've known a lot of disabled
> individuals in my life, . . . it would be great if they all
> could work properly and do whatever, whatever, . . . I am
> very impressed with people who try to go above and

21

beyond in spite of their disability to perform well, okay.
I don't think that's the case here.

• • •

Q.  Why do you think it's not the case with Linda
here, that it's because of her disability?

A.   . . . the kinds of requests that have come from
Linda is every day . . . there are so many different
requests that come in to make her life better, and . . . if I
had to spend the amount of time that I did with the 100,
200 employees that I have, I would not be able to -- they
would need ten of me, okay.

. . . . that's what I meant by the model employee, the one
that comes to work on time, leaves on time, tries to abide
by the rules because you have to impose the same rules to
the other population you have, the other 200 people you
got.  I cannot make an exception for one individual
because of the union contract or whatever, because I'm
also responsible to the other employees.  And if it was an
example setting thing where she was the leader in an area
and she was able to do this on her own and say this is
what I can do, I'd really admire that, okay.

(Luiz Decl. Ex. H at 86-87.)

Although this evidence may not be sufficient to be considered direct

evidence of discriminatory animus with respect to each alleged adverse action, this

evidence is at least sufficient to raise an inference of discrimination and create a

genuine issue of fact as to whether the legitimate reason of insubordination was a

pretext for the discipline, or if an illegitimate reason more likely motivated

Defendants or was at least a motivating factor in the discipline.  See Stegall, 350

22

F.3d at 1068 ("In the end, the inquiry is straightforward:  put simply, the plaintiff

in any Title VII case may establish a violation through a preponderance of

evidence (whether direct or circumstantial) that a protected characteristic played a

motivating factor.") (internal quotations, brackets and citation omitted).

b. <u>Reasonable Accommodation</u>

In addition to a disparate treatment and retaliation claim, Plaintiff has

also brought a claim for failure to provide a reasonable accommodation.

Defendants argue that they have provided Plaintiff with a reasonable

accommodation since she is allowed to use the flexible start time and begin work at

9:00 a.m. and if she is tardy, she may use her sick or vacation time.  First, this is

not necessarily a reasonable accommodation as Defendants admit that a 9:00 a.m.

start time is offered to many government employees who choose to work a flexible

schedule, and because Plaintiff starts later in the day, she finishes later.

Furthermore, requiring Plaintiff to use sick or vacation time when she gets to work

later than 9:00 a.m. is not an accommodation whatsoever.

Although it may be true that Plaintiff has failed to fill out the

appropriate forms for vacation and sick time when she is tardy, failed to provide

DAGS with updated medical information in response to their requests, and given

many different reasons for her tardiness that are unrelated to her sleep disorders,

23

this Court cannot determine that her requested accommodation - - to start work

after 9:00 a.m. and work later that 5:45 p.m. - - is unreasonable as a matter of law.

It may very well be reasonable for Defendants to allow Plaintiff to start later than

9:00 a.m. and complete her daily work from home later in the evening.  Indeed, the

question of reasonableness is ordinarily left to the jury.  <u>Schmidt v. Safeway</u>, 864

F. Supp. 991, 997 (D. Or. 1994).  Moreover, although Defendants claim that

starting after 9:00 a.m. is operationally inefficient, they have not argued that it is an

undue burden.  Therefore, Defendants, motion for summary judgment is denied.

II.      <u>Plaintiff's Cross-Motion for Summary Judgment</u>

        Plaintiff seeks summary judgment and a finding that there are no

triable issues of fact that:  (1) Defendants are subject to the requirements of Section

504 of the Rehabilitation Act; (2) Defendants retaliated against Plaintiff; and (3)

Defendants are prohibited from introducing after acquired evidence at trial.

        This Court GRANTS Plaintiff's motion with respect to the first issue

that the Rehabilitation Act is applicable to Defendants, as discussed in section I.B.

above.  This Court DENIES the remainder of Plaintiff's motion.  First, Plaintiff did

not present sufficient facts or legal argument related to her retaliation claim such

that this Court could enter summary judgment in her favor.  Second, Plaintiff did

not explain the relevance of an after-acquired evidence issue.  Plaintiff may make a

motion in limine at the appropriate time regarding this issue if necessary.


<u>CONCLUSION</u>

For the reasons stated above, the Court DENIES Defendants' Motion

for Summary Judgment and GRANTS IN PART AND DENIES IN PART

Plaintiff's Cross-Motion for Partial Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 2, 2007.



_____
David Alan Ezra
United States District Judge


<u>Starr v. State of Hawaii</u>, CV No. 05-00665 DAE-LEK; ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S CROSS-
MOTION FOR PARTIAL SUMMARY JUDGMENT